UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: PROPECIA (FINASTERIDE) PRODUCTS LIABILITY LITIGATION | Master File No.: 1:12-md-02331-JG-VVP MDL No. 2331 |

| | | |
|---|---|---|
| KEITH T. WALKER and ALLYSON WALKER, | ) ) ) | |
| **PLAINTIFFS** | ) ) ) ) | CAUSE NO: 1:15-cv-7233 |
| **VS.** | ) ) | |
| MERCK & CO., INC. | ) ) | |
| & | ) ) | |
| MERCK SHARPE & DOHME CORPORATION | ) ) ) | |
| **DEFENDANTS** | ) ) ) | |

## PLAINTIFFS' PETITION

Plaintiffs by and through their undersigned Counsel, and for their Complaint against the

Defendants Merck & Co., Inc. and Merck Sharpe & Dohme Corporation (collectively

"Defendants"), allege as follows:

## NATURE OF THE CASE

1.     This is an action for damages suffered by Plaintiffs as a direct and proximate

result of Defendants' wrongful conduct in connection with the development, design, testing,

labeling, packaging, promoting, advertising, marketing, distribution, and selling of Defendants'

prescription medications containing finasteride.

2.     Defendants manufacture and sell products containing finasteride used as a

prescription treatment for androgenic alopecia.

1

3.      Defendants knew or should have known that finasteride, when taken as prescribed and intended, causes and contributes to an increased risk of persistent and/or permanent serious and dangerous side effects including, without limitation, cognitive impairment, development of depression, and various forms of sexual dysfunction such as erectile dysfunction, reduced ejaculate volume, diminished or reduced libido, reduced sexual sensation and/or infertility ("sexual dysfunction") even after discontinuation of use.

## VENUE & JURISDICTION

4.      Venue in this action properly lies in the Eastern District of New York pursuant to Order of the Judicial Panel on Multidistrict Litigation.

5.      This court has jurisdiction over Defendants.   Defendants are New Jersey corporations, Plaintiffs are not citizens of New Jersey and more than $75,000 in damages are in dispute.  The Court has diversity jurisdiction over this matter.

## PARTIES

### Plaintiffs

6.      Plaintiff Keith T. Walker is a citizen of the state of Idaho and a resident of Idaho Falls, Idaho.  Plaintiff Keith T. Walker was prescribed and ingested finasteride products to treat male pattern baldness.  Plaintiff Allyson Walker is the spouse of Plaintiff Keith T. Walker and has incurred damages as a result of the injuries suffered by her spouse.

### Defendants

7.      Upon information and belief, Defendant Merck & Co., Inc. is a corporation organized and existing under the laws of New Jersey, and has its principal place of business located in Whitehouse Station, New Jersey.

8.    Upon information and belief, Defendant Merck Sharpe & Dohme Corporation is a corporation organized and existing under the laws of New Jersey, and has its principal place of business located in Whitehouse Station, New Jersey.

9.    At all times relevant herein, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and sold the prescription drug finasteride, sold under the name Propecia, Proscar or generic finasteride, in interstate commerce and throughout the United States.

## GENERAL FACTUAL ALLEGATIONS

10.    Finasteride was initially developed to treat patients with symptoms of benign prostatic hyperplasia ("BPH"), and then later approved for the treatment of androgenic alopecia, also known as male pattern hair loss.

11.    Male pattern hair loss affects 30% of men by the age of 30 years and 50% of men by the age of 50 years.  Men who suffer from hair loss may be perceived as older and less physically and socially attractive.

12.    Male pattern hair loss is a common condition thought to be caused by a combination of genetic factors and a hormone called dihydrotestosterone ("DHT").

13.    DHT is a substance in the body that can shrink hair follicles until a person no longer has hair on top of his head.

14.    DHT is produced when a chemical substance, 5-alpha reductase, reacts with normal testosterone and converts it to DHT.

15.    Finasteride is a 5-alpha reductase inhibitor that decreases the conversion of testosterone to DHT, therefore, preventing hair loss.

16.    Finasteride may produce undesirable side effects to patients who use the prescription drug, including but not limited to, sexual dysfunction and cognitive impairment.

17.     The rates of the sexual dysfunction as a result of finasteride are reported to be as high as 39% in published clinical studies.  In addition, it has been reported in 2003 that only 50% of patients experience resolution of their sexual function adverse events after discontinuation of finasteride.

## LABEL AND SIDE EFFECTS

18.     The U.S. Food and Drug Administration ("FDA") initially approved finasteride in 1992 under the brand name Proscar as a treatment for BPH.  Proscar is the brand name of the five (5) milligram tablet of finasteride.

19.     In 1997, the FDA approved Propecia as a one (1) milligram tablet of finasteride for prescription use as a cosmetic treatment for male pattern hair loss.

20.     Over one million people in the United States have used Propecia since the prescription drug was introduced into the U.S. market.  In addition, an untold number of men have been prescribed Proscar, to be cut into 1mg portions, to treat male pattern baldness.  This off-label use of Proscar was widespread and Defendants were aware of this practice and ,in fact, promoted this off-label use.

21.     Defendants promote the use of Propecia for treatment of male pattern hair loss as a safe treatment with minimal risk.  In its product labeling, Defendants represent that a limited number of users may experience side effects including sexual dysfunctions such as decreased libido, erectile dysfunction, and ejaculation disorder as well as potential depression.

22.     In 2006, the Swedish Medical Products Agency began investigating reports of persistent sexual dysfunctions that continued in men despite discontinuing Propecia.

23.     In 2008, Defendants changed the Propecia label in Sweden to include the following warning:

4

In addition, the following have been reported in post-marketing use: persistence of erectile dysfunction after discontinuation of treatment with Propecia.

24.     In August 2009, the Swedish Medical Products Agency concluded that Propecia (finasteride) could lead to permanent erectile dysfunction.

25.     Upon information and belief, Defendants have also changed the Propecia label in other European countries, including the United Kingdom and Italy, to include a warning of persistent and/or permanent erectile dysfunction after discontinuation of treatment

26.     The Medicine Health Care Products Regulatory Agency, the United Kindgom's equivalent to the FDA, published a public assessment report on the risk of finasteride in December of 2009 stated that, "In addition, the following have been reported in post-marketing use: persistence of ED after discontinuation of treatment with Propecia." (Section 4.8 Undesirable Effects).

27.     According to the FDA's website, Defendants have updated the Propecia label in the United States nine times since introducing the drug into the market, and none of the label revisions as of June 9, 2011[1] have included a warning regarding persistent and/or permanent sexual dysfunction in patients that discontinued use of the prescription drug.

28.     Upon information and belief, in April of 2011 Defendants updated its prescribing information on their website, www.propecia.com, to indicate patients have reported "erectile dysfunction that continued after discontinuation of treatment."  Upon information and belief, Defendants update is the first warning it gave to patients in the U.S. regarding persistent and/or permanent sexual dysfunction after discontinuation of use.

---

[1] This is the date of the most recent label update for Propecia.

29.    Upon information and belief, the Propecia label distributed in the United States continues to fail to warn users of persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use.

## SPECIFIC FACTUAL ALLEGATIONS

30.    Prior to using finasteride products Plaintiffs did not suffer from sexual dysfunctions or cognitive impairment.   However, while consuming finasteride products, Plaintiffs began to suffer severe sexual dysfunction and cognitive impairment.   Plaintiffs' adverse effects continued after they discontinued using finasteride products.

31.    To date, Plaintiffs' continue to suffer from adverse side effects, including but not limited to, sexual dysfunction and cognitive impairment.  As a direct and proximate cause of their finasteride induced side effects, Plaintiffs have suffered significant pain and suffering, and their quality of life has been severely diminished.

## FRAUDULENT CONCEALMENT

32.     Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by each defendant when it had a duty to disclose those facts.  Each defendant has kept plaintiffs ignorant of vital information essential to its pursuit of these claims for the purpose of obtaining delay on plaintiffs' part in filing a complaint on their causes of action.  Defendants' fraudulent concealment did result in such delay. Plaintiffs could not reasonably have discovered these claims until shortly before filing their original complaint.

33.    Each defendant was under a continuing duty to disclose the true character, quality, and nature of its drug that Plaintiffs ingested, but instead concealed them.  As a result, each defendant is estopped from relying on any statute of limitations defense.

## FIRST CAUSE OF ACTION
### STRICT LIABILITY

34.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

35.    At all relevant times hereto, Defendants were engaged in the development, testing, manufacture, marketing and sale of finasteride products.   Defendants designed, manufactured, marketed, and sold finasteride products to medical professionals and their patients, knowing it would be ingested for the treatment of male pattern hair loss.

36.    Finasteride as designed, manufactured, marketed and sold by Defendants reached Plaintiffs without substantial change in its condition and was used by them in a reasonably foreseeable and intended manner.

37.    Finasteride was "defective" and "unreasonably dangerous" when it entered the stream of commerce and was received by Plaintiffs, because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer.  At no time did Plaintiffs have reason to believe that finasteride was in a condition not suitable for its proper and intended use among patients.

38.    Finasteride was used in the manner for which it was intended, that is, for treatment of male pattern hair loss.  This use resulted in injury to Plaintiffs.

39.    Plaintiffs were not able to discover, nor could they have discovered through the exercise of reasonable care, the defective nature of finasteride.  Further, in no way could Plaintiffs have known that Defendants had designed, developed, and manufactured finasteride in such a way as to increase the risk of harm or injury to the recipients of finasteride.

40.     Finasteride is defective in design because of its propensity to cause persistent and/or permanent sexual dysfunction side effects and other indefinite injuries after discontinuation of use.

41.     Finasteride is unreasonably dangerous because it was sold to Plaintiffs without adequate warnings regarding, *inter alia,* the propensity of finasteride to cause persistent sexual side effects after discontinuation of use; the post-marketing experience with finasteride; and the numbers of persistent sexual adverse events reported.

42.     Defendants failed to develop and make available alternative products that were designed in a safe or safer manner, even though such products were feasible and marketable at the time Defendants sold finasteride to Plaintiffs.

43.     Defendants had knowledge and information confirming the defective and dangerous nature of finasteride.  Despite this knowledge and information, Defendants failed to adequately and sufficiently warn Plaintiff and his physicians that finasteride causes serious persistent and/or permanent injuries including, without limitation, sexual dysfunction and cognitive impairment after discontinuation of use.

44.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have sustained and will continue to sustain severe and debilitating injuries, pain and suffering, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and emotional distress, for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
### NEGLIGENCE

45.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

46. At all relevant times, Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, marketing, sale, and distribution of finasteride, including a duty to ensure that finasteride did not pose a significantly increased risk of persistent and/or permanent injury to its users.

47. Defendants had a duty to exercise reasonable care in the advertising and sale of finasteride products. This included a duty to warn Plaintiffs and other consumers of the dangers associated with the consumption of finasteride that were known or should have been known to Defendants at the time of the sale of finasteride products to the Plaintiffs.

48. Defendants failed to exercise reasonable care in the design, testing, manufacture, marketing, sale and distribution of finasteride products because Defendants knew or should have known that finasteride had a propensity to cause serious injury, including persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use.

49. Defendants failed to exercise ordinary care in the labeling of finasteride products and failed to issue adequate pre-marketing or post-marketing warnings to prescribing doctors and the general public regarding the risk of serious injury, including, without limitation, persistent and/or permanent sexual dysfunction side effects and cognitive impairment after discontinuation of use.

50. Defendants knew or should have known that Plaintiffs could foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

51. Defendants breached their duty of reasonable care to Plaintiffs by failing to exercise due care under the circumstances.

52. As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, testing, manufacture, sale, and

distribution of finasteride products, Plaintiff s ingested finasteride products and sustained and will continue to sustain severe and debilitating injuries, pain and suffering, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and emotional distress, for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTIES

53.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

54.     At the time Defendants marketed, sold and distributed finasteride products, Defendants knew of the use for which finasteride was intended and impliedly warranted that finasteride was merchantable, safe and fit for its intended purpose: namely that Plaintiffs could ingest finasteride without the risk of serious persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use.

55.     Plaintiffs, foreseeable users of finasteride products, and Plaintiffs' physicians, reasonably relied upon Defendants' judgment and implied warranties in purchasing and consuming finasteride products as intended.

56.     Finasteride was defective, unmerchantable, and unfit for ordinary use when sold, and subjected Plaintiffs to severe and permanent injuries.

57.     Defendants breached their implied warranties because finasteride was and continues to be neither of merchantable quality nor safe for its intended use in that finasteride has the propensity to cause persistent sexual dysfunction and other bodily harm after discontinuation of use.

58.     As a direct and proximate result of Defendants' breach of the implied warranties of merchantability and fitness for its intended purpose, Plaintiffs ingested finasteride products and sustained and will continue to sustain severe and debilitating injuries, pain and suffering, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and emotional distress, for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY

59.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

60.     Defendants through their marketing program, promotional activity, product labeling, package inserts, and other written and verbal assurances expressly warranted to physicians and consumers, including Plaintiffs and/or their physicians, that finasteride had been shown by scientific study to be safe for its intended use.

61.     Plaintiffs, and/or their physicians, reasonably relied upon Defendants' express warranties in purchasing, consuming, and prescribing Finasteride.

62.     Defendants breached their express warranties because finasteride as manufactured and sold by Defendants does not conform to these express representations in that finasteride has a propensity to cause persistent sexual function and other bodily harm after discontinuation of use.

63.     As a direct and proximate result of Defendants' breach of their express warranties, Plaintiffs ingested finasteride products and sustained and will continue to sustain severe and debilitating injuries, pain and suffering, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and emotional distress, for which they are

entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

64.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

65.     Defendants carelessly and negligently manufactured, marketed, and sold finasteride products to Plaintiffs; carelessly and negligently concealed these defects from Plaintiffs; and carelessly and negligently misrepresented the quality and safety of finasteride. Defendants should have realized that such conduct involved an unreasonable risk of causing emotional distress to reasonable persons that might, in turn, result in illness or bodily harm.

66.     Defendants owed a duty to treating physicians and Plaintiffs to accurately and truthfully represent the risks of finasteride.  Defendants breached that duty by misrepresenting and/or failing to adequately warn of the risks of finasteride – effects of which Defendants knew or in the exercise of diligence should have known – to treating physicians and Plaintiffs.

67.     As a direct and proximate result of Defendants' wrongful conduct and breach of duty, Plaintiffs have sustained and will continue to sustain severe emotional distress either due to physical injury or a rational fear of physical injury and is entitled to recovery of damages in an amount to be proven at trial. Defendants are liable to Plaintiffs jointly and/or severally for all general, special and equitable relief to which Plaintiffs are entitled by law in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**LOSS OF CONSORTIUM**

68.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

69.     Plaintiff's spouse, identified specifically above, has been caused injury and incurred damages as a result of her spouse's use of finasteride products.

70.     For the reasons set forth herein, Plaintiffs' spouse has been caused, presently and in the future, to suffer the loss of her spouse's companionship, services, society.  The marital association between husband and wife has been impaired and Plaintiff's spouse has suffered mental and emotional anguish as a result.

71.     As a direct and proximate result of Defendants' wrongful conduct and breach of duty, Plaintiff's spouse has sustained and will continue to sustain severe emotional and emotional distress and is entitled to recovery of damages in an amount to be proven at trial. Defendants are liable to Plaintiffs jointly and/or severally for all general, special and equitable relief to which Plaintiff is entitled by law in an amount to be proven

**WHEREFORE**, Plaintiffs pray for relief in excess of $100,000 against Defendants, jointly and severally, as follows:

1.     Compensatory damages in an amount to fully compensate Plaintiffs for all their injuries and damages, both past and present;

2.     Special damages in an amount to fully compensate Plaintiffs for all of their injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including permanent instability and loss of balance, and pain and suffering;

3.      Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiffs in an amount sufficient to punish Defendant and deter future similar conduct;

4.      Double or triple damages as allowed by law;

5.      Attorneys' fees, expenses, and costs of this action;

6.      Pre-judgment and post-judgment interest in the maximum amount allowed by law; and,

7.      Such further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims asserted in this Complaint.


DATED:  December 18, 2015                    Respectfully submitted,

*/s/ Andrew S. Williams*
Andrew S. Williams   #41947
Trent B. Miracle
**SIMMONS HANLY CONROY**
One Court Street
Alton, IL 62002
Telephone:  618.259.2222
Facsimile:  618.269.2251
awilliams@simmonsfirm.com
tmiracle@simmonsfirm.com

**Counsel for Plaintiffs**

14